UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Keith Lamont Johnson,

    Plaintiff,

v.                                                                              Case No. 07-13951

City of Detroit, *et al.*,                                              Honorable Sean F. Cox

    Defendants.
_____/

## OPINION & ORDER GRANTING
## TRENTON DEFENDANTS' MOTION TO DISMISS

In this action, Plaintiff asserts § 1983 claims and state law tort claims against the City of Detroit, the City of Woodhaven, the City of Trenton, Macomb County, Wayne County, and various individual employees of same. The matter is currently before the Court on a Motion for Summary Judgment filed by the Trenton Defendants. The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decisional process. *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion will be decided upon the briefs. For the reasons below, the Court shall GRANT the motion.

### BACKGROUND

A.    Plaintiff's Complaint:

Plaintiff Keith Lamont Johnson ("Plaintiff") filed this § 1983 action on September 19, 2007, against numerous Defendants, including the City of Trenton, Michigan ("Trenton" or "the City"), Officer Watson, Officer Quill, Lt. McMillan, employees of the City, and John Doe II and

1

Jane Doe II, unidentified employees of the City (collectively "the Trenton Defendants"). Plaintiff's complaint contains three counts: 1) a § 1983 claim against the individual defendants; 2) a § 1983 claim against the cities of Detroit, Trenton and Woodhaven and Macomb and Wayne Counties; and 3) state law assault and battery and false imprisonment claims against the individual defendants.

Plaintiff's complaint alleges the following facts. At some point during 1990, "Plaintiff had been arrested based on an alleged warrant existing for offenses committed in the City of Detroit, for a person with his name and date of birth; that person however was not plaintiff. Subsequent to this arrest, after a comparison of his fingerprints with those of the person who was wanted on warrant, Plaintiff was released." (Compl. at ¶ 5).

1.      The September 28, 2004 Arrest:

On September 28, 2004, Plaintiff was arrested by a police officer with the City of Woodhaven's Police Department on outstanding warrants for arrest out of Macomb County and Wayne County. Plaintiff told the Woodhaven officer that he was not the Keith Johnson wanted on the warrants. (Compl. at ¶ 8). Plaintiff was arrested and taken to the Woodhaven Police Station. (*Id*. at ¶¶ 10-11). After the Macomb County Sheriff's Department had been called by an employee of the City of Woodhaven, notifying it that Johnson was in custody, Plaintiff was transported by Macomb County Deputies from the City of Woodhaven Jail to the Macomb County Jail. Plaintiff told the Macomb County deputies that he was the "wrong person." (*Id.* at 14). Plaintiff was not released until approximately 4:30 p.m. on September 29, 2004, after the Macomb County Circuit Court instructed the Macomb County Sheriff's Department to establish Plaintiff's identity by fingerprints. (*Id.* at ¶¶ 15-17).

Plaintiff does not allege that the Trenton Defendants were involved in the September 28, 2004 arrest or detention.

2.      January 23, 2007 Arrest:

"On January 23, 2007, at about 11:30 a.m. Plaintiff was stopped for a seatbelt violation by Defendant Patrolman Watson," an officer of the Trenton Police Department. (*Id.* at ¶ 19). Officer Watson determined that Plaintiff was wanted on an outstanding felony warrant in Wayne County. (*Id.* at ¶ 20). Watson arrested Plaintiff and took him to the Trenton Police Station. (*Id.* at ¶¶ 21-22). While at the Trenton Police Station, Plaintiff told Watson, and Defendants John and Jane Doe II, that he was the "wrong person" and showed them a "letter of clearance" from the Detroit Police Department that indicated Plaintiff did not have a criminal record. (*Id.* at ¶¶ 18 & 23).

After Watson communicated that Plaintiff was in custody, Wayne County Deputies picked Plaintiff up from the Trenton Police Station and transported Plaintiff to the Wayne County Jail. (*Id.* at ¶¶ 25-26). Plaintiff was then confined to the Wayne County Jail on January 23, 2007, at approximately 8:07 p.m. (*Id.*). Plaintiff was ultimately discharged from the Wayne County Jail on January 25, 2007, at 6:53 p.m. (Compl. at ¶ 28).

B.    Procedural History:

The Macomb County Defendants filed a Motion to Dismiss on November 19, 2007. In an Opinion & Order issued on February 13, 2008 (Docket Entry No. 32), this Court granted that motion and dismissed all claims against the Macomb County Defendants.

The Woodhaven Defendants filed a Motion to Dismiss on March 27, 2008. In an Opinion & Order issued on May 20, 2008 (Docket Entry No. 38), this Court granted that motion

3

and dismissed all claims against the Woodhaven Defendants.

On July 16, 2008, the Trenton Defendants filed the instant Motion for Summary Judgment.

## ANALYSIS

In its Motion for Summary Judgment, the Trenton Defendants assert several grounds for relief, which are discussed below.

A.   <u>Defendant Watson, Quill, McMillan and John And Jane Doe II's Assertion Of Qualified Immunity:</u>

"Under the qualified immunity doctrine, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Perez v. Oakland County*, 466 F.3d 416, 426 (6th Cir. 2006)(citing *Walsh v. Cuyahoga County*, 424 F.3d 510, 513 (6th Cir. 2005). As both parties recognize in their briefs, in evaluating a qualified immunity defense, the court engages in a two-part analysis.

The Court first determines whether, on the facts alleged, the official violated a constitutional or statutory right. *Id*. "If the Plaintiff does not establish the violation of a constitutional or statutory right, the inquiry ends there and the official is entitled to immunity." *Perez,* 466 F.3d at 427.

Under the second step, the Court determines whether the right violated was "clearly established" at the time of the violation. *Id.* "The burden of showing that the right was clearly established 'rests squarely with the plaintiff.'" *Id*. at 427 (citing *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999). The relevant inquiry in determining if a right was clearly established is

4

whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. The plaintiff must show that the right was clearly established "in light of the specific context of the case, not as a broad general proposition." *Id.* "If reasonable officers could disagree about the lawfulness of the conduct in question, immunity must be recognized." *Id.* "In order to determine if the law is clearly established such that a reasonable official could determine that his actions were unlawful, the court looks principally to the law of [the Sixth Circuit] and the Supreme Court." *Id* For Plaintiff, this means that he must show that binding authority would have alerted reasonable people in the Defendant officers' position that their conduct was unlawful. *Id.* at 428.

Defendants claim that to the extent that Plaintiff alleges that the Trenton officers deprived him of his Fourth and Fourteenth Amendment rights to be free from unlawful seizure in light of his repeated protested innocence, his claim fails. Defendants contend that the leading case on this issue is *Baker v. McCollan*, 443 U.S. 137 (1979), and that *Baker* establishes that no constitutional violation was committed by the officers if they, as alleged, detained him despite his protested innocence for a period of less than one day. Defendants state that detainment for a period of less than one day[1] is less than the period of time that the plaintiff in *Baker* was detained and the Court held that detainment gave no rise to a constitutional claim.

The Court agrees that Plaintiff has failed to allege a cognizable constitutional violation by the Trenton officers, and they are therefore entitled to qualified immunity under the first step

---

[1] Plaintiff's complaint alleges that he was arrested by Watson at 11:30 a.m. and was then confined to the Wayne County Jail later that same day at 8:07 p.m. (Compl. at ¶¶ 19 & 26). Defendants have submitted arrest records that indicate that Plaintiff was released to Wayne County at approximately 5:35 p.m. (Ex. A to Defs.' Motion).

of the qualified immunity analysis.

Here, as in *Baker* and *Gray*, the question presented is whether someone who is wrongly imprisoned as a result of mistaken identity can state a constitutional claim against his jailers based on their failure to ascertain that they had the wrong man. *Gray*, 150 F.3d at 582; *Baker,* 443 U.S. at 143-44.

As the Sixth Circuit noted in *Gray*, "[t]he leading case on this issue" is *Baker*. "In *Baker*, the Supreme Court held that where a plaintiff was arrested pursuant to a facially valid warrant, and where the plaintiff was detained for three days over the New Year's holiday despite his protestations of mistaken identity, the plaintiff's wrongful imprisonment did not give rise to a claim that the Fourth Amendment prohibition against unreasonable seizures had been violated." *Gray*, 150 F.3d at 582. The *Baker* Court concluded that "[w]hatever claims this situation might give rise to under state tort law, we think it gives rise to no claim under the United States Constitution." *Baker*, 443 U.S. at 144. Thus, the plaintiff had "no claim cognizable under § 1983." *Baker*, 443 U.S. at 146-47.

"However, the Court went on to acknowledge that '[o]bviously, one in [the plaintiff's] position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment." *Gray*, 150 F.3d at 582. The Court stated that "[w]e may even assume, *arguendo*, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty . . . without due process of law.' *But we are quite certain that a detention of three days over a New*

*Year's weekend does not and could not amount to such a deprivation.*"  *Baker*, 443 U.S. at 145 (emphasis added).

In *Gray*, the Sixth Circuit noted that following *Baker,* there have been opportunities for courts to consider how long a period of wrongful incarceration must be before constitutional concerns are implicated.  *Gray*, 150 F.3d at 582.  The Sixth Circuit noted that a district court in Pennsylvania had found a period of 30 days, coupled with the fact that defendants had the ability to discover the error, may be sufficient to state a § 1983 claim.  The *Gray* Court concluded that Plaintiff had a cognizable claim of a constitutional violation under the facts presented, where the plaintiff had been incarcerated for 41 days under the facially valid warrant, despite the fact that defendants possessed a photograph of the wanted man that looked "nothing like" plaintiff and the physical description of the wanted man referred to scars that Plaintiff did not have.

Here, when construing the facts alleged in the light most favorable to Plaintiff, Plaintiff was arrested pursuant to a facially valid warrant and was detained for less than one day at the Trenton Police Station despite his protestations of mistaken identity to the Trenton officers.  Accordingly, the Court concludes that under *Baker* and *Gray,* Plaintiff has not alleged a cognizable constitutional claim against the Trenton officers.  *See also Garcia v. Wayne County*, 2007 WL 2868026 (E.D. Mich. 2007); *McGee v. Kowalski*, 2008 WL 2743919 (E.D. Mich. 2008).   Plaintiff's § 1983 claim against the Trenton officers will therefore be dismissed.

B.  <u>Plaintiff's § 1983 Claim Against The City:</u>

Next, Defendants assert that Plaintiff's § 1983 claim against the City must be dismissed if the Court concludes that Trenton officers committed no constitutional violation.

Plaintiff does not dispute Defendants' legal argument that, if Plaintiff cannot establish a

constitutional violation by the Trenton officers occurred, Plaintiff cannot maintain a § 1983 claim against the City. Rather, Plaintiff responds by asserting that based on the pleadings and case law, he maintains that the officers did commit a constitutional violation.

The Court agrees that the City is entitled to summary judgment on the § 1983 claims against it because a "conclusion that no officer-defendant had deprived the plaintiff of any constitutional right a fortiori defeats the claim against the county . . ." *Scott v. Clay Co., Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000). As stated above, the Court finds that the Trenton officers are entitled to qualified immunity because, under the facts alleged, no constitutional violation occurred. That conclusion defeats Plaintiff's § 1983 claim against the City, requiring its dismissal.

C. Plaintiff's Intentional Tort Claims Against The Trenton Officers:

In Count III, Plaintiff asserts a claim for assault and battery and false imprisonment against the Trenton officers. (Compl. at 6).

1. False Imprisonment:

"To prevail on a claim of false arrest, the plaintiff must show that the arrest was not legal, i.e., that it was made without probable cause." *Blase v. Appicelli*, 195 Mich.App. 174, 177 (1992); *see also Hess v. Village of Wolverine Lake*, 32 Mich.App. 601 (1971)(the "essence of a claim of false imprisonment is that the imprisonment is false, i.e., without right or authority to do so."). It is well-established that "[a]n arresting officer can justify his or her conduct in making an arrest or detaining a person after arrest if the officer can show that he or she was acting in obedience to a lawful warrant, regular on its face, issued by a magistrate or judge having jurisdiction to issue such a warrant." 10A Mich.Pl. & Pr. § 73:4 *False Arrest or Imprisonment:*

8

*Defenses, generally – Arrest under warrant* (2d ed.)(citations omitted).

Defendants assert that they are entitled to summary judgment on Plaintiff's false imprisonment claim because it is undisputed that the Trenton officers arrested Plaintiff under a properly issued warrant.

In response, Plaintiff does not contest that he was arrested pursuant to a facially valid warrant. Rather, he asserts that he can still maintain a claim for false imprisonment under *Flones v. Dalman*, 199 Mich.App. 396, 404 (1994). Plaintiff's reliance on *Flones* is misplaced. Indeed, the *Flones* court recognized that "an officer who merely executes a warrant that is valid on its face is protected from liability." *Id*. at 404. It concluded that a false imprisonment claim could proceed against the defendant in that case because the defendant did not arrest the plaintiff, but rather that the defendant gave information that became the basis for the warrant without investigating, or even mentioning, exculpatory information that he had obtained prior to seeking the warrant. Here, the Trenton officers had no role in obtaining the warrant. They simply arrested Plaintiff pursuant to a facially valid warrant. Thus, the Court concludes that Plaintiff's false imprisonment claim against them must be dismissed.

2.       Assault & Battery:

Defendants note that it appears that Plaintiff's assault and battery claim against the officers is based upon their touching of Plaintiff during the arrest, transport and booking process. They note, however, that Plaintiff's complaint does not allege that any officer used excessive force.

In responding to the motion, Plaintiff does not claim that any officer used excessive force, and Plaintiff has not submitted any evidence to establish that any officer used excessive

9

force.  Rather, Plaintiff simply asserts that a claim for false imprisonment always include the torts of assault and battery.  As stated above, however, the Court concludes the Plaintiff's false imprisonment claims against the Trenton officers must be dismissed.

Moreover, to the extent that Plaintiff asserts an assault and battery claim based on any touching of Plaintiff during the arrest process, the Court finds that such a claim must be dismissed.  Under Michigan law, an arresting officer may use such force as is reasonably necessary to effect a lawful arrest.  *Padlo v. VG's Food Center, Inc.*, 2005 WL 1774081 (E.D. Mich. 2005)(citing *Young v. Barker*, 158 Mich.App. 709, 723 (1987)).  Here, Plaintiff has not alleged any facts, much less offered any evidence to establish, that any of the Trenton Defendants used excessive force during his arrest.

Accordingly, the Court shall grant summary judgment in favor of the Defendant officers with respect to Plaintiff's tort claims.

## CONCLUSION & ORDER

For the reasons above, the Motion for Summary Judgment filed by the Trenton Defendants is GRANTED and Plaintiff's claims against the Trenton Defendants are DISMISSED.

IT IS SO ORDERED.

                                               s/Sean F. Cox
                                               Sean F. Cox
                                               United States District Judge

Dated:  January 27, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 27, 2009, by electronic and/or ordinary mail.

                                               s/Jennifer Hernandez
                                               Case Manager